UNITED STATES COURT OF APPEALS
DISTRICT OF COLUMBIA CIRCUIT

---

Case Number: 25-1073

SKY ELEMENTS, LLC,
PETITIONER

v.

FEDERAL AVIATION ADMINISTRATION,
RESPONDENT

---

**PETITIONER'S EMERGENCY MOTION FOR STAY**

Pursuant to Federal Rules of Appellate Procedure 8, 18, and 27, and 49 U.S.C. § 46110, Petitioner Sky Elements, LLC, ("Sky") moves for an emergency stay of two actions of the Federal Aviation Administration ("FAA"). On January 13, 2025, the FAA issued a Final Action letter terminating Sky's drone operational waiver preventing it from operations or provision of its drone services ("Termination Letter, Exh. A. ). The FAA's action was preceded by the FAA's December 23, 2024, letter suspending the same drone operational waiver held by Sky ("Suspension Letter," Exh. B). The waiver which was the subject of both of these actions was Sky's Part 107 Waiver No. 107W-2024-02478 ("Waiver," Exh. C). Sky requests that this Court immediately reinstate Sky's Waiver until all matters before this Court are adjudicated.

1

## EMERGENCY RELIEF WARRANTED

Emergency relief is warranted because Sky has not been able to operate or provide services since December 21, 2025. Without a stay of the FAA's Termination Letter (and Suspension Letter) and reinstatement of Sky's Waiver Sky cannot provide its services. The FAA has indicated no timeline for reissuing Sky's waiver, and although it promised relief on two occasions, it missed all of its proposed timelines without explanation. The FAA may not address Sky's waiver issue for up to two (2) years. A stay is necessary under these circumstances as without it Sky will be required to cease all operations, terminate its business, cancel the remainder of its service contracts, and release its employees.

Sky requests this Court's intervention as soon as possible, but no later than the seven (7) days provided under Circuit Rule 27(f). Sky's counsel conveyed its request for expedited relief by telephone to the clerk's office and by electronic mail to the FAA. It is sending a copy of this motion by courier today. No stay has previously been sought from the FAA and any attempt to seek a stay would be futile. The last time Sky's counsel contacted the FAA and requested reconsideration of the FAA's suspension of Sky's waiver and relief the FAA responded by terminating Sky's Waiver. The FAA now appears to have ceased processing Sky's requests or formally responding to Sky.

## THE LETTERS ARE FINAL ACTIONS, REVIEW TIMELY

The FAA's Termination Letter is a final order of the FAA subject to appeal to this Court within sixty (60) days of the date of that action, pursuant to 49 U.S.C. § 46110. *Americopters, LLC v. Federal Aviation Administration*, 441 F.3d 726, 732 (9th Cir. 2006), *aff'd sub nom. Jan's Helicopter Serv., Inc. v. F.A.A.*, 525 F.3d 1299 (Fed. Cir. 2008) ("[w]e have direct and exclusive jurisdiction over the review of FAA final orders under 49 U.S.C. § 46110…."); *Latif v. Holder*, 686 F.3d 1122, 1128 (9th Cir. 2012).

The Termination Letter is a final action because it terminated the Waiver and operated as a final disposition of Sky's Waiver. The term "order" under 49 U.S.C. § 46110 is to be read expansively to encompass all final dispositions. *Aviators for Safe & Fairer Regulation, Inc. v. Federal Aviation Administration*, 221 F.3d 222, 225 (1st Cir. 2000). Even though the Termination Letter "anticipates" that a "new waiver" should be issued by January 31, 2025, (which the FAA did not do) the letter was final as to the Waiver and did not indicate that termination was tentative or conditional, or that further actions would be taken on the Waiver. *See, City of Dania Beach v. Federal Aviation Administration*, 485 F.3d 1181, 1188 (D.C. Cir. 2007). In the event that the Suspension Letter could be interpreted as "final" we likewise request a stay of and relief from that letter and note that the Petition has been filed within sixty (60) days of the dates of both letters.

3

## BACKGROUND

Sky is an operator of drone light shows. In response to significant demand for drone light shows as a safer, sustainable, and more environmentally friendly alternative to fireworks shows, Mr. Preston Ward and other investors formed Sky and began providing drone light shows in 2021. Affidavit of Preston Ward, paras 1, 2 ("Ward Aff'd," Exh. D). In 2023 Sky conducted 435 shows consisting of 113,529 drone flights. *Id*., at para. 3. In 2024 it performed 775 shows consisting of 299,175 drone flights for a total of approximately 54,852 flight hours. *Id*. During the last 24 months Sky has amassed 75,665 flight hours of drone shows in front of live audiences. *Id*. In addition to the live shows, Sky has conducted countless hours of testing, training, and demonstration flights not in front of audiences. *Id*.

Sky operates under Part 107 waivers issued by the FAA. *Id*., at para. 4. Its Waiver, and the FAA's suspension and termination of its Waiver, are the subject of this Motion. Until December 21, 2024, Sky experienced no incidents involving injury to flight crews, spectators, or third parties. It has had an exemplary safety record. *Id*.

On December 21, 2024, during a performance in Orlando, Florida, some of Sky's drones collided resulting in flight deviations for three drones that reportedly struck spectators ("Incident"). *Id*. Mr. Ward sent the FAA an initial notification of the Incident within hours of it occurring on the evening of December 21 and flew

4

to Orlando the next morning to begin Sky's internal investigation. He provided his initial report to the FAA the evening of December 22 and responded to the FAA's initial questions later that evening. *Id*. at paras. 4, 5. The next day, December 23, 2024, Mr. Hufty of the FAA issued the letter suspending Sky's waiver pending an FAA investigation. Exh. B. Mr. Hufty's letter did not identify investigation procedures, proposed timelines, or provide transparency of the process. It did not explain the reasoning behind a company-wide suspension versus pilot or other reasonably tailored suspension or action.

After timely reporting the Incident through the FAA's reporting system, Sky continued its internal investigation and submitted its findings to the FAA in a letter from Mr. Ward to Mr. Hufty of the FAA, dated December 30, 2024, nine (9) days after the Incident ("Ward Letter," Exh. E). This letter sets forth facts relevant to the Incident in more complete detail. In the Ward Letter Sky requested reconsideration of the Suspension Letter, to which the FAA did not respond. *Id*.

Sky removed the pilot in charge of the Incident pending further investigation and reevaluation of internal procedures. *Id*. Sky was responsive and acted promptly. Sky detailed its investigation results and proposed corrective action. Sky did not wait for FAA action but adopted and immediately implemented actions and new procedures to guard against any similar future incident.

5

On January 2, 2025, the FAA posed additional questions and asked whether the Incident was the result of a "company mindset issue," based on some undisclosed internal informal communication. Mr. Ward corrected apparent misconceptions and provided technical details involving all drone light shows. The FAA responded that after internal discussions "we will be making changes to all of the drone light show waivers." Emails, Exh. F, p.5. The FAA issued a request for information (RFI) on January 3, 2025. Emails, Exh. G, p. 9. The FAA requested modifications to Sky's "waiver document" and stated that the FAA would work to renew a revised waiver. Sky immediately submitted the waiver modifications requested by the FAA on January 3, 2025. *Id*., Ward Aff'd, Exh. D, para. 6.

In response, the FAA stated it would amend Sky's current waiver and permit it to stay in effect until its expiration in July of 2025, with a test demonstration of the changes conducted on January 3 (Emails, Exh. G, p.1), just before the next show on Monday, January 6. The FAA stated that it would "work up" the new waiver and get it signed by January 4, 2025. *Id*. The FAA did not issue a replacement waiver nor did it reinstate the Waiver.

Contrary to the FAA's assurances, Sky has received only conflicting and indefinite statements about the status of its waiver, any FAA investigation, or any procedures to be followed. Its waiver has not been reinstated. The FAA indicated it would lift its suspension so that Sky could resume operations. Instead, Sky was

6

informed that "someone higher up" had placed a hold on lifting the suspension, but we have no other information on that action. Ward Aff'd, Exh. D, para. 7.

Sky resubmitted its proposed operational changes tailored to prevent a future accident, 107W-2025-00098, as previously discussed with the FAA on January 9, 2025, seeking to accelerate the FAA's reinstatement of its waiver. The undersigned sent a letter to the FAA ("January 9 Letter," Exh. H) notifying the FAA of the resubmission and demanding immediate action, and either reinstatement of its then-current waiver, 107W-2024-02478 as originally granted, or as amended by Sky's January 9th amendment 107W-2025-00098.

On January 13, 2025, the FAA responded to Sky's January 9 letter by immediately terminating Sky's waiver. Exh. A. The FAA stated it was drafting a revised waiver with a target date of January 31, 2025, but it never issued a new waiver.

The FAA missed its own proposed deadline, and as of today Sky has no indication of when a new waiver will be issued. Other than a four (4) page preliminary report dated January 16, 2025, that lifted liberally from Sky's reports, and communications with both Sky and the undersigned that recent airline tragedies in Washington, D.C. and Philadelphia have stretched resources making it unlikely the FAA will return to Sky's waiver in any reasonable time frame, Sky has no indication of when its waiver issue may be resolved. The FAA's inaction is

exacerbated by its lack of an Administrator and other senior decisionmakers from January 20 until recently. Obtaining timely and reasonable action from the FAA under these circumstances it almost impossible.

The FAA's investigation, procedures, and position on the suspension and termination remain vague, and appear subject to interference by an undisclosed senior official. The FAA has no set procedures for review of its actions or participation in investigations. As far as we have determined all of the FAA's actions are performed *ad hoc*, and in a completely arbitrary and capricious manner subject to the whims of unknown and unidentified senior administrators.

FAA officials have contacted Sky customers on an *ex parte* basis without any advance notification or ability of Sky to participate. The FAA informed a Sky customer, the City of Garland, Texas, that Sky cannot perform shows, causing the City to cancel a contract for a show this summer. "Garland Letter," Exh. I; Ward Aff'd, Exh. D, para. 8. An FAA official opined that Sky may be grounded for two years. Neither communication was shared with Sky or its counsel.

## ARGUMENT

This Court may issue an emergency stay upon consideration of the following factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured

8

absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987). A stay is warranted here to prevent Sky from having to cease all operations and dissolve. The FAA's actions have already caused irreparable harm, and the loss of well over two and a half million dollars, and without immediate relief it will be required to cancel the remainder of its contracts and will not be able to retain its employees. Sky requests this Court to stay the Termination Letter and Suspension Letter, set aside the Termination Letter and the Suspension Letter, order the FAA to conduct further proceedings in compliance with the Administrative Procedures Act and due process, order the FAA to reinstate the Waiver, and order the FAA to issue a new waiver to Sky before any reinstated waiver expires valid. *See, Latif*, 686 F.3d at 1128.

    A.    **Sky is Likely to Succeed on the Merits**

The FAA has acted in an *ad hoc* and arbitrary and capricious manner, violated Sky's due process rights, and violated its own terms contained in the Waiver. The FAA's procedures and investigation lack transparency. The Waiver states that it "is subject to cancellation at any time upon notice by the Administrator or an authorized representative." But the FAA's power to cancel is not unlimited and cannot be exercised in an arbitrary and capricious manner.

9

The Waiver itself qualifies the Administrator's powers to cancel the waiver. The FAA's Special Provisions Issued to Sky Elements LLC states that

> The administrator may cancel this waiver at any time. As a general rule, this Waiver may be canceled when it is no longer required, there is an abuse of its provisions, or when unforeseen safety factors develop. Failure to comply with any provision listed below is a violation of the terms of this Waiver and will serve as justification for cancellation.

Waiver, p. 2.

Neither the FAA's Termination Letter, nor any other FAA correspondence, identifies any violation of the terms of the Waiver. The Waiver is still required – as Sky had shows lined up throughout its current waiver period. The FAA does not allege any abuse of the provisions contained in the Waiver, nor does it specify any "unforeseen safety factors." In fact, neither the FAA's Termination Letter nor the Suspension Letter specify any grounds for the FAA's actions. The Termination Letter states that the FAA is "developing a new waiver" with additional safety elements but does not identify those elements. It provides no indication of the status or process for any investigation, and Sky has been provided none. The FAA "anticipates" that it will issue a new waiver by January 31, 2025, a deadline that has now passed. With its leadership in flux (and missing entirely during part of the intervening period) and now pressed with multiple major accident investigations, Sky has no assurances of timely resolution nor is there any clear path for obtaining relief from the FAA. Sky has provided its own extensive analysis of events leading

10

to the Incident and has proposed concrete steps to adopt additional layers of fail-safe checks. The FAA has provided no response to any of Sky's submissions and has largely ignored Sky except to provide the cancellation letter, and in recent correspondence has stated that its consideration of Sky's waiver will be postponed due to other circumstances.

The FAA's actions violate the Administrative Procedures Act which requires that "an agency action must be the product of reasoned decisionmaking," and prohibits actions that are rule is arbitrary and capricious. *Fox v. Clinton*, 684 F.3d 67, 74-75 (D.C. Cir. 2012). Agencies must give a reasoned, record-based explanation that does not "run counter to the evidence before the agency," shows a "rational connection between the facts found and the choice made," and considers all "important aspect[s] of the problem." *Motor Vehicle Manufacturers Assoc. of the United States, Inc. v. State Farm Mutual Auto. Ins. Co.*, 463 U.S. 29, 42-43 (1983). The FAA's Termination Letter and Suspension Letter fail this test. They are entirely silent as to the FAA's reasons for suspending or canceling Sky's Waiver and fail to discuss or identify any lesser steps it could take to achieve the same result. The FAA failed to cite to any aspect of its own drone waiver rules, 14 C.F.R. 107.200, and cites only to a portion of the waiver itself, failing to address any condition Sky violated.

11

The FAA fails to address Sky's own investigation results and disclosure to the FAA and ignores Sky's proposed changes to its operations to guard against a similar incident again occurring. Even before *Loper Bright Ent. V. Raimondo*, limiting *Chevron* deference and reinstating *Skidmore*,[1] courts have held that they will set aside FAA actions if the FAA "relied on improper factors, failed to consider important relevant factors, or committed a clear error of judgment that lacks a rational connection between the facts found and the choice made. *Aerial Banners v. FAA*, 547 F.3d 1257 (11th Cir. 2008) *citing U.S. Steel Corp. v. Astrue*, 495 F.3d 1272, 1279 (11th Cir. 2007).

Unlike *Aerial Banners*, where multiple safety violations were well documented, Sky has only had the Incident. Although the Incident unfortunately resulted in a reported spectator contact it was a singular accident that Sky had researched and documented and provided the FAA with a full and complete report. Sky has provided the FAA access to its employees and the pilot in charge of the show that led to the Incident. Even with early reporting to and cooperation with the FAA, the FAA has chosen to cancel Sky's waiver rendering Sky unable to provide shows or generate income. Rather than taking a focused and targeted action in response to the Incident, the FAA has chosen to shut down all of Sky's operations.

---

[1] *Loper Bright Enters v. Raimondo*, No. 22-451, ___ U.S. _____ (June 28, 2024); *Skidmore v. Swift and Company*, 323 U.S. 134, 139-40 (1944);.

12

As mentioned above, the FAA engaged in direct contact with a Sky customer, the City of Garland, Texas (Exh. J; Ward Aff'd, Exh. D, para. 8), causing cancellation of Sky's contract for a July4, 2025, show, and in another instance suggested that Sky would be grounded for two years. These actions and statements were made without any administrative due process, and Sky only learned of them through communications from its customers. Sky requests that this court direct the FAA to cease and desist from such extra-judicial communications. Sky requests a stay of any FAA notifications to Sky customers pending conclusion of its investigation and issuance or reinstatement of a waiver. The FAA's communications are causing immediate and lasting irreparable harm and are being made outside of any context of a final decision or action.

Sky requires relief from this Court to guard it against the power vacuum recently experienced by the FAA. The FAA was operating without an Administrator and other senior decisions makers during the change of administrations and is now faced with serious time-consuming challenges and accident investigations. Sky's waiver should be reinstated until such time as the FAA can complete its work. Sky is likely to prevail on the merits of its request because the FAA has provided no reasoning for review by this court, and it is impossible to test the FAA's cancellation of Sky's waiver for thoroughness, validity, or consistency.

13

### B. Absent a Stay, Sky will Suffer Irreparable Injury

The FAA's inaction and ultimate cancellation has imposed immediate and irreparable injuries on Sky. The FAA's indefinite company-wide suspension cost Sky a total of $1,016,676 in lost revenue between December 24, 2024, and January 6, 2025, with an additional loss of $763,082 in revenue for shows that Sky had to refer to third parties to perform. Ward Aff'd, Exh. D, para. 9. Sky has lost an additional $1,031,000 due to the ongoing suspension and termination. *Id*. The FAA's termination of Sky's Waiver prevents Sky from performing any shows leading to weekly revenue losses of approximately $423,000. *Id*. The FAA's interference with Sky's customer City of Garland resulted in a revenue loss of $150,000. Ward Aff'd, Exh. D, para. 10.

If the FAA's arbitrary and capricious termination and suspension are not immediately stayed and Sky's waiver reinstated Sky will need to lay off all of its employees and permanently cease operations. Ward Aff'd, Exh. D, para. 11.

### C. Granting the Stay Would Not Harm the Government's Legitimate Interests.

The government has a legitimate interest in the regulation of air traffic and drones. This interest does not justify the government's arbitrary and capricious cancellation of Sky's Waiver. Sky has identified and implemented changes to its drone show operations and guidelines, tailored to issues it identified in its own investigation and submitted these to the FAA. The FAA could achieve the same

14

result by suspending the pilot in charge of the show resulting in the Incident (who Sky has already moved to a non-operational position) or permitting Sky to continue to operate under its waiver with the operational amendments Sky adopted as a result of its internal investigation. Issuance of a stay of the FAA's arbitrary and capricious termination of Sky's waiver does not advance adoption of new drone show guidelines, it will only cause Sky to cease all operations. The government's interest in promoting safe drone shows will not be harmed by a stay, particularly in light of Sky's own investigation and adoption of operational modifications that will prevent a repeat of the Incident.

      **D.**    **The Public Interest Heavily Favors a Stay.**

Drone shows have proven to be a popular and safe alternative to evening fireworks shows. Ward Aff'd, Exh. D, para. 2. State and local governmental units and private entities have increasingly engaged drone show companies such as Sky to provide lighted drone shows as entertainment. Terminating the ability of a major provider of lighted drone shows lessens competition and the number of companies authorized to provide such shows without providing any increase in public safety. The FAA has adopted no minimum operational safety guidelines, it has not commented upon or adopted Sky's operational modifications, and it has provided no guidance to Sky or the industry. No aspect of the FAA's termination letter serves the public interest.

15

In contrast, the public has an interest in well-reasoned and consistent application of governmental rules. Arbitrary and capricious actions such as the FAA's in the current instance harms companies attempting to comply with federal rules, harms the employees of such companies, and harms the public by failing to provide consistent and reliable guidance. The public interest will not be harmed by granting a stay, in the alternative, it will be served by requiring the FAA to act in a reasoned, reasonable, reliable, and timely manner in the issuance and enforcement of its waivers and rules.

## CONCLUSION

Pursuant to 49 U.S.C. § 46110, 5 U.S.C. § 706, and Fed. Rule App. Proc. 15, Sky Elements, LLC petitions this Court for an emergency stay or the FAA's Termination Letter and Suspension Letter and an order reinstating Sky's Waiver until the FAA completes its investigation and issues Sky a new waiver.

Respectfully submitted,

/s/ Walter E. Steimel, Jr.
WALTER E. STEIMEL, JR.
D.C. Circuit Bar No. 446262
STEIMEL COUNSELORS LAW GROUP PLLC
1455 Pennsylvania Ave., N.W., Suite 400
Washington, D.C. 20004
(202) 271-9258
Fax (202) 652-2308
wes@sclgrp.com

Dated: February 21, 2025

16

CERTIFICATE OF COMPLIANCE WITH
TYPEFACE AND WORD-COUNT LIMITATIONS

I, Walter E. Steimel, Jr., counsel for Petitioner and a member of the Bar of this Court, certify pursuant to Federal Rules of Appellate Procedure 27(d) and 32(g) that the foregoing Emergency Motion to Stay is proportionally spaced, has a serif typeface of 14 points or more, and contains 3,679 words.

/s/ Walter E. Steimel, Jr.
Walter E. Steimel, Jr.

CERTIFICATE OF SERVICE

I, Walter E. Steimel, Jr., counsel for Petitioner and a member of the Bar of this Court, certify that, on February 21, 2025, a copy of the foregoing Emergency Motion for Stay was filed with the Clerk and served on the parties through the Court's electronic filing system, and served via email to Taneesha Marshall, Assistant Chief Counsel, Aviation Litigation, FAA, with a courtesy copy to Lorelei Peter, Principal Deputy Chief Counsel, as follows:

Taneesha.Marshall@faa.gov

Lorelei.Peter@faa.gov.

We are serving by courier hand-delivery to the following:

Chris Rocheleau, Acting Administrator
Federal Aviation Administration
800 Independence Avenue S.W.
Washington, DC 20591

William "Liam" McKenna, Esq., Acting Chief Counsel
Federal Aviation Administration
800 Independence Avenue S.W.
Washington, DC 20591

Taneesha Marshall, Esq.
Assistant Chief Counsel, Aviation Litigation
Federal Aviation Administration
800 Independence Avenue S.W.
Washington, DC 20591

I further certify that all parties required to be served have been served.

/s/ Walter E. Steimel, Jr.
Walter E. Steimel, Jr

18